UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

James Briks, et al.,

          Plaintiffs,

v.

Smith, Strege, Fredericksen,
Butts, & Clark, Ltd., et al.,

          Defendants.

Case No. 19-cv-44 (WMW/LIB)

**REPORT AND RECOMMENDATION**

---

This matter comes before the undersigned United States Magistrate Judge upon referral from the Honorable Wilhelmina M. Wright pursuant to 28 U.S.C. § 636, [Docket No. 16], of the Defendants Smith, Strege, Fredericksen, Butts, & Clark, Ltd. and Richard Smith's (hereinafter collectively "Defendants") Motion to Dismiss, [Docket No. 57]. The Court took Defendants' Motion under advisement on the parties' written submissions. (Order [Docket No. 102]).

For the reasons discussed herein, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 57], be **GRANTED**.

**I.   Procedural Posture**

Plaintiffs James Briks and Jerome Briks (hereinafter collectively "Plaintiffs"), proceeding pro se, initiated the present case on January 8, 2019. (Compl. [Docket No. 1]). Plaintiffs named as Defendants "Smith, Strege, Fredericksen, Butts, & Clark, Ltd., d/b/a Smith & Strege, Ltd." and Richard Smith. (See, Id.).

On February 8, 2019, Defendants responded to Plaintiffs' initial Complaint by filing their Motion to Dismiss. [Docket No. 11]. On February 12, 2019, the Honorable Wilhelmina M. Wright

referred all dispositive and non-dispositive motions to the undersigned pursuant to 28 U.S.C. § 636. (Order [Docket No. 16]).

On June 6, 2019, after completion of the briefing on Defendants' initial Motion to Dismiss, the undersigned issued a Report and Recommendation which, in relevant part, recommended dismissing the present action. (Report and Recommendation [Docket No. 51]). Plaintiffs objected to that Report and Recommendation. (Objections [Docket No. 52]).

In ruling on Plaintiffs' objections, Judge Wright found that while Defendants' initial Motion to Dismiss was targeted at Plaintiffs' initial Complaint, [Docket No. 1], "the February 19, 2019 amended complaint is the operative complaint in this matter." (Order, [Docket No. 55], at 1–2). Accordingly, Judge Wright denied as moot Defendants' initial Motion to Dismiss. (Id.).

Thus, per Judge Wright's Order, the operative complaint in the present case is Plaintiffs' February 19, 2019, Amended Complaint. [Docket No. 23-1]. Defendants have now responded to Plaintiffs' Amended Complaint with the present Motion to Dismiss. [Docket No. 57].

## II. Background[1]

According to Plaintiffs' now operative Amended Complaint, [Docket No. 23-1], Plaintiffs' brother, Donald Briks, passed away on September 9, 2010. (Amended Compl., [Docket No. 23-1], at 3). In relevant part, the remainder of Plaintiffs' Amended Complaint alleges as follows:

> 7. In 1992, Attorney Smith and Smith and Strege created a trust for Donald ["Trust"]
>
> 8. In 1993, Donald contemplated obtaining a loan from a bank through the Trust, ["loan"]

---

[1] The facts in the present background are compiled from Plaintiffs' Amended Complaint, [Docket No. 23-1], as well as, judicial records implicitly referenced in Plaintiffs' Amended Complaint and other public records. Generally, in evaluating a complaint, materials outside the pleadings cannot be considered on a motion to dismiss. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court "may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record" such as judicial records. See, e.g., Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).

9. Prior to the Loan, James owned, among other real property interest, a 1/7th the interest in property in Wilkin County legally described as: The Northwest Quarter [NW ¼] and South Half [S ½] of section one [1], Township One Hundred Thirty-Three [133] North Range Forty-Seven [47] West of the Fifth [5th] Principal Meridian, Wilkin County, Minnesota ["Home Farm"]

10. Prior to the Loan, James owned, among other real property interest, a 1/7th interest in other property in Wilkin County legally described as: The Southeast ["SE ¼"] Quarter of Section one [1] Township One Hundred Thirty-six [136] North Range Forty-Eight [48] West of the Fifth [5th] Principal Meridian, Wilkin County, Minnesota and the Northeast [NE ¼] Quarter of Section Twelve [12], Township One Hundred Thirty-Six [136] North, Range Forty-Eight [48] West of the Fifth [5th] Principal Meridian, Wilkin County, Minnesota ["Wolverton Property"]

11. Prior to the Loan, Jerome owned, among other real property interest, a 1/7th interest in the Home Farm.

12. Prior to the Loan, Jerome owned, among other real property interest, a 1/7th interest in the Wolverton Property.

13. To properly collateralize the Loan, Plaintiffs agreed to convey their interest in the Wolverton Property to the Trust.

14. Plaintiffs, Donald, and the Trust did not intend for Plaintiffs to convey any interest in the Home Farm to the Trust.

15. Attorney Smith and Smith Strege knew that Plaintiffs, Donald, and the Trust did not intend for Plaintiffs to convey any interest in the Home Farm to the Trust.

16. Attorney Smith and Smith Strege knew that the Trust did not need Plaintiffs' interest in the Home Farm to properly collateralize the Loan.

17. Attorney Smith and Smith Strege knew that the Loan would not be collateralized by Plaintiffs' interest in the Home Farm.

18. Donald, the Trust, and Plaintiffs understood that Plaintiffs were placing legal title to the Wolverton Property in the Trust for no consideration. Attorney Smith and Smith Strege knew of this arrangement.

19. Donald and the Trust intended to convey legal title to the Wolverton Property back to the Plaintiffs for no consideration at a later date when it was no longer required to secure the Loan. Attorney Smith and Smith Strege knew of this arrangement and the intentions of Donald and the Trust.

20. In 1993, Attorney Smith and Smith Strege prepared Quit Claim deeds that expressly conveyed Plaintiffs' interest in the Wolverton Property to the Trust ["1993 Quit claim deeds"].

21. Inexplicably, however, the recorded Quit Claim deeds included an Exhibit A. Exhibit A lists multiple properties, including the Home Farm, and others that Plaintiffs did not own.

22. Exhibit A was not referenced anywhere on the face of the 1993 Quit claim deed.

23. The 1993 Quit Claim deeds, absent Exhibit A, did not reference the Home Farm.

24. In fact, and by law, the 1993 Quit claim deeds did not transfer any interest in the Home Farm to the Trust.

25. Attorney Smith and Smith Strege prepared, advised, and encouraged the execution of, and understood the purpose of the Quit Claim deeds.

26. In 2011, after Donald passed, Attorney Smith and Smith Strege reviewed the real property holdings of the Trust.

27. In 2011, after Donald passed away, Attorney Smith and Smith Strege obtained an abstract relating to the properties.

28. Without properly analyzing the 1993 Quit claim deeds, Attorney Smith and Smith Strege incorrectly concluded that the Trust held Plaintiffs' respective interest in the Home Farm.

29. Without consulting or advising Plaintiffs, but after advising the Trust through its trustees, Attorney Smith and Smith Strege prepared another set of quit claim deeds (2011 Quit Claim deeds)

30. The 2011 Quit Claim deeds expressly conveyed $1/7^{th}$ interest in the Home Farm from the Trust to each of the Plaintiffs.

31. Attorney Smith and Smith Strege again prepared, obtained execution of, delivered, and recorded deeds from the Trust to Plaintiffs in 2012 relating to the Wolverton Property without first consulting or advising Plaintiffs (2012 Quit claim deeds)

32. After the 2011 Quit claim deeds and the 2012 Quit claim deeds, Trust beneficiary Beverly Jaehning commended litigation against the Trust and its trustees in Minnesota District Court for Wilkin county [Trust Litigation]

33. In the Trust Litigation, the Court found that the purported conveyances to the Plaintiffs, who were advised by Attorney Smith and Smith Strege, were wrongful under the Trust's forming and governing documents.

34. The Trust forming and governing documents were drafted by Attorney Smith and Smith Strege.

35. In the Trust Litigation, the Court ordered the Trust and its trustees to either (1) obtain payment from Plaintiffs for the property purportedly received by the Plaintiffs via the 2011 Quit claim deeds and the 2012 Quit claims deeds, or (3) sue Plaintiffs.

36. Plaintiffs settled with the Trust for the sum of $369,428.57.

37. Plaintiffs therefore contend that the above named defendants were Negligence in the duties that was owed to Plaintiffs under the Good-faith and Fair Dealings Guidelines, set out in procedural Due Process, the defendants acted with intent and intention to cause harm to the Plaintiffs. As a result of defendants extreme and outrageous conduct defendants were the proximate cause of the harm Plaintiffs have suffered

(Amended Compl., [Docket No. 23-1], at 3–8) (reproduced as original) (alteration including brackets in original). On the basis of these factual allegations, Plaintiffs allege a single cause of action for negligence seeking monetary damages. (Id. at 9–10).

As alleged in Plaintiffs' Amended Complaint, after the death of Donald Briks, the new Trustees (the sisters of Donald Briks) objected to the transfer of any property out of the Trust without compensation, and in response to the purported transfer of some Trust property interest back to James Briks and Jerome Briks, the new Trustees filed an action in Minnesota State Court against Smith, Strege, Fredericksen, Butts, & Clark, Ltd. and Richard Smith seeking "all recoveries available" resulting from the inadvertent transfer of property into the Trust and the attempt to return said property interest to James Briks and Jerome Briks. As also discussed in Plaintiffs' Amended Complaint, [Docket No. 23-1], that state court litigation initiated by the Trustees, in which James Briks and Jerome Briks participated, but do not appear to have been named parties, resulted in a settlement agreement in which James Briks and Jerome Briks "agreed to purchase

real estate from the Trust at $3,000 per acre, reduced by payment made by" Smith, Strege, Fredericksen, Butts, & Clark, Ltd. and Richard Smith to the Trust to settle claims for erroneous advice given by Smith, Strege, Fredericksen, Butts, & Clark, Ltd. and Richard Smith to the Trust resulting in those transfers.[2]

Thereafter, Plaintiffs here (James Briks and Jerome Briks), proceeding pro se, initiated a separate lawsuit directly against Defendants here (Smith, Strege, Fredericksen, Butts, & Clark, Ltd. and Richard Smith) in the Eighth Judicial District, County of Wilkin, State of Minnesota, District Court. Briks v. Smith, Strege, Fredericksen, Butts, & Clark, Ltd., 84-cv-17-31. In that action, Plaintiffs asserted three claims: (1) a legal malpractice claim stemming from the original Trust creation, (2) a legal malpractice claim stemming from the creation of the quit claim deeds, and (3) a purported legal malpractice and contribution claim stemming from the damages allegedly suffered by Plaintiffs from the creation of the quit claim deeds. See, Id.

On December 3, 2018, the Honorable Amy J. Doll dismissed Plaintiffs' claims in the legal malpractice state court action against Defendants finding that Plaintiffs' legal malpractice claim stemming from the Trust creation was time barred by the statute of limitations. Id. Regarding Plaintiffs' legal malpractice claims against Defendants stemming from the quit claim deeds in 2011 and 2012, Judge Doll dismissed those claims finding that Plaintiffs had failed to demonstrate any financial harm suffered from the creation of said quit claim deeds. See, Id. The State District Court concluded that if Defendants actions caused Plaintiffs any damages, it was Defendants' actions taken in 1993 that did so, not Defendants' actions taken in 2011 or 2012. Id. Judge Doll entered Judgment dismissing Plaintiffs' legal malpractice claims on December 26, 2018. Briks v.

---

[2] This procedural history can be found in Briks v. Smith, Strege, Fredericksen, Butts, & Clark, Ltd., 84-cv-17-31, December 3, 2018 Order.

Smith, Strege, Fredericksen, Butts, & Clark, Ltd., 84-cv-17-31, Judgment (Minn. Dist. Ct. Dec. 26, 2018).

Plaintiffs appealed the State District Court's findings to the Minnesota Court of Appeals. See, Briks v. Smith, Strege, Fredericksen, Butts, & Clark, Ltd., A19-0136 Order (Minn. Ct. App. July 22, 2019). The Minnesota Court of Appeals affirmed the State District Court's dismissal of Plaintiffs' claims in State Court. Id.

On August 21, 2019, Plaintiffs petitioned the Minnesota Supreme Court for review of the Minnesota Court of Appeals' affirmation of Judge Doll's granting of summary judgment. On October 15, 2019, the Minnesota Supreme Court denied Plaintiffs' petition for further review. Briks v. Smith, Strege, Fredericksen, Butts, & Clark, Ltd., A19-0136 Order (Minn. Oct. 15, 2019). Following the denial of Plaintiffs' petition for review to the Minnesota Supreme Court, the Minnesota Court of Appeals entered judgment on Plaintiffs' claims on October 17, 2019. Briks v. Smith, Strege, Fredericksen, Butts, & Clark, Ltd., A19-0136 Judgment (Minn. Ct. App. Oct. 17, 2019).

### III.  Defendants' Motion to Dismiss. [Docket No. 57].

Defendants now seek an Order of this Court dismissing Plaintiffs' Amended Complaint. Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' Amended Complaint pursuant to the Rooker-Feldman[3] doctrine "because Plaintiffs' negligence claim . . . is identical to a previously-litigated Minnesota state court case and, thus, 'inextricably intertwined' with specific claims already adjudicated to a final judgment in Minnesota state court." (Defs.' Mem., [Docket No. 58], at 2).[4] Plaintiffs filed various documents which purport to be responses

---

[3] Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).
[4] Defendants also argue that "[t]o the extent the court liberally construes the Amended Complaint to include a claim for an alleged violation of Procedural Due Process, the Amended Complaint fails to state claims upon which relief can be granted because it does not allege that any of the Defendants were state actors at any time, but rather, alleges

7

to Defendants' Motion to Dismiss; however, none of these documents address Defendants' argument that this Court lacks subject matter jurisdiction over Plaintiffs' Amended Complaint under the Rooker-Feldman doctrine. (See, [Docket Nos. 69, 70, 72, 74, 76, 80, 84, 91, 82, 95, 103, 105]). Instead, Plaintiffs appear to generally argue that the Court cannot recommend that Defendants' Motion to Dismiss as directed at Plaintiffs' Amended Complaint be granted because Judge Wright previously denied Defendants' motion to dismiss as directed at Plaintiffs' initial complaint.

### A. Standard of Review

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction.

There are two types of subject matter jurisdiction challenges. See, e.g., Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). One type of subject matter jurisdictional challenge requires the court to examine the face of the pleadings. See, Id. at 729. In addressing a facial challenge to subject matter jurisdiction, a court is to accept all factual allegations in the pleadings as true, and it views them in the light most favorable to the nonmoving party, as it would when

---

conduct that occurred in the private practice of law." (Id. at 2). Although Plaintiffs' initial Complaint alleged a claim for a violation of Plaintiffs' constitutional rights secured by the Fourteenth Amendment, Plaintiffs' Amended Complaint, [Docket No. 23-1], which, as previously discussed, Judge Wright has concluded is the operative pleading in the present action, does not support a construction including a claim for an alleged violation of Procedural Due Process. Rather, the sole claim raised by Plaintiffs' operative Amended Complaint, [Docket No. 23-1], is a negligence claim alleging legal malpractice. Although, as noted above, Plaintiffs' Amended Complaint contains the phrase "Due Process" it is only mentioned in passing as a descriptor for Plaintiffs' negligence claim. Although the Court is required to liberally construe Plaintiffs' Amended Complaint in their favor, the Court will not supply additional facts in support of any claim nor construct a legal theory for Plaintiffs that assumes facts that have not been pled. See, Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989). Moreover, in the undersigned's previous Report and Recommendation, [Docket No. 51], the undersigned explained the reasons why Plaintiffs' previously asserted constitutional claims failed as asserted against Defendants, and nothing in Plaintiffs' Amended Complaint would correct that fatal pleading failure. Thus, the undersigned does not further address Defendants' arguments related to any hypothetical claim for an alleged violation of Procedural Due Process.

8

ruling on a Rule 12(b)(6) motion. Cmty. Fin. Grp., Inc. v. Republic of Kenya, 663 F.3d 977, 980 (8th Cir. 2011) (citing Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008)). The second type of challenge requires the Court to go beyond the pleadings to resolve a factual dispute necessary to determine whether the Court has subject matter jurisdiction. See, e.g., Osborn, 918 F.2d at 729. In ruling on this second type of fact-implicated challenge to subject matter jurisdiction, the Court is not limited in the manner that it would be if it considered matters beyond the pleadings in the context of a Rule 12(b)(6) motion to dismiss. Id. Rather, the Court is free to consider the pleadings, affidavits in support of and in opposition to the motion, and even hold an evidentiary hearing if deemed necessary to take testimony. Id. In addition, the Court is not required to presume the truthfulness of the information in the non-moving party's documents, and the existence of a dispute of material fact will not preclude the court from evaluating the merits of the jurisdictional claims. Id. at 730.

While the Court is required to construe the content within Plaintiffs' pleadings liberally as they are proceeding pro se, Plaintiffs are nevertheless bound by applicable procedural and substantive law. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); see, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted); see, e.g., Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d

1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

### B. Analysis

This Court must first address the issue of whether or not it has the requisite subject matter jurisdiction necessary to adjudicate Plaintiffs' claims. See, Fed. R. Civ. P. 12(h)(3); Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."); United States v. Mayo Foundation, 729 F.3d 825, 828 (8th Cir. 2013) (acknowledging that the Court must address jurisdictional issues first); Johnson v. City of Shorewood, Minn., 360 F.3d 810, 818 (8th Cir. 2004).

"The 'basic theory' of the Rooker-Feldman doctrine is 'that only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district courts generally lack subject-matter jurisdiction over 'attempted appeals from a state-court judgment.'" Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cty. v. Beebe, 578 F.3d 753, 758 (8th Cir. 2009) (citation omitted). Courts apply the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [Federal] district court proceedings commenced and inviting [Federal] district court review and rejection of those [State Court] judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Hageman v. Barton, 817 F. 3d 611, 614 (8th Cir. 2016) (citations omitted).

A party who was unsuccessful in state court thus "is barred from seeking what in substance would be appellate review of the state court judgment in a United States District Court, based on the losing party's claim that the state judgment itself violated the loser's federal rights." Johnston v. DeGrandy, 512 U.S. 997, 1005–1006 (1994) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)). The Eighth Circuit

10

Court of Appeals has noted that the Rooker-Feldman doctrine "extends not only to 'straightforward appeals [of state court decisions] but also [to] more indirect attempts by federal plaintiffs to undermine state court decisions.'" Ballinger v. Culotta, 322 F.3d 546, 547–48 (8th Cir. 2003) (quoting Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000)).

The doctrine deprives lower federal courts of jurisdiction over claims that are also "inextricable intertwined" with claims adjudicated in state court. Feldman, 460 U.S. at 482 n. 16. "A general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000) (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)); see, Canal Capital Corp. v. Valley Pride Pack, Inc., 169 F.3d 508, 512 (8th Cir. 1999).

In the present case, Plaintiffs' claim in their operative Amended Complaint falls squarely within, and is therefore barred by, the Rooker-Feldman doctrine because Plaintiffs' claim here is "inextricable intertwined" with the Eighth Judicial District, State Court judgment which dismissed Plaintiffs' state court claims when those claims were previously adjudicated in Minnesota State Court.

Plaintiffs' Amended Complaint presents to this Court the exact same factual and legal issues Plaintiffs previously submitted to the Minnesota State Courts. In fact, Plaintiffs' Amended Complaint itself indicates that it is the exact same document Plaintiffs submitted to the State Court on February 7, 2019, as the document was stamped received by the State Court on February 7, 2019. (See, Amended Compl., [Docket No. 23-1], at 1). This inference is further supported by the fact that Plaintiffs' Amended Complaint is captioned with the information from Plaintiffs' State

Court case and directed at the State of Minnesota, County of Wilkin, District Court, Eighth Judicial District. (See, Id.).

Here, Plaintiffs seek monetary damages from Defendants because Plaintiffs believe Defendants' actions of creating the Trust in 1993 and creating quit claim deeds in 2011 and 2012 were a negligent performance of Defendants' duties. These purported claims, however, can only succeed if this Federal Court were to find that the State Court wrongly decided the legal malpractice issues previously before it. This is an action the Rooker-Feldman doctrine clearly states this Federal District Court cannot take.

Plaintiffs ask this Federal Court to find that Defendants' actions in providing legal representation were negligent; however, Plaintiffs have previously and repeatedly asked the State Court to reach the same finding, and the State Courts have consistently declined to do so. The Federal Court here could not grant Plaintiffs any form of requested relief without first invalidating the State Court Orders and concluding that the State Court wrongly decided the issue before it. Here again, these are actions the Rooker-Feldman doctrine clearly provides that this Federal Court cannot take.

Accordingly, even reading the Amended Complaint as a whole, construing it liberally, and drawing all inferences in Plaintiffs' favor, the Court finds that Plaintiffs' claim is "inextricably intertwined" with the Judgment of the Minnesota State Court, and the sole claim in Plaintiffs' Amended Complaint is thus jurisdictionally barred for lack of subject matter jurisdiction by the Rooker-Feldman doctrine. See, Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000).

Therefore, to the extent Defendants' Motion to Dismiss seek dismissal of Plaintiffs' Amended Complaint based on the application of the Rooker-Feldman doctrine, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 57], be **GRANTED**. The

undersigned further recommends that Plaintiffs' Amended Complaint be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

## IV. Conclusion

Therefore, based on the foregoing discussion, all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendants' Motion to Dismiss, [Docket No. 57], be **GRANTED**; and

2. The present action be **DISMISSED without prejudice**.

Dated: January 21, 2020                                s/ Leo I. Brisbois
                                                       Hon. Leo I. Brisbois
                                                       U.S. MAGISTRATE JUDGE

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).